IRVING, J,
 

 for the Court.
 

 ¶ 1. Alexander and Maurice Womack were convicted in the Simpson County Circuit Court of attempted armed robbery and sentenced to serve five years in the custody of the Mississippi Department of Corrections. Aggrieved, Alexander and Maurice assert: (1) that the circuit court erred when it allowed the State to use unverifiable pretextual reasoning for using all six of its peremptory strikes against African American jurors and (2) that the trial court erred in denying their motion for a new trial because the verdict was against the overwhelming weight of the evidence.
 

 ¶2. Finding no reversible error, we affirm the judgment of the circuit court.
 

 FACTS
 

 ¶ 8. On December 30, 2006, Alexander and Maurice were arrested for attempted armed robbery of the Exxon Truck Stop located on Highway 49 in D’Lo, Mississippi. They were indicted on March 5, 2007, and a trial was held on September 20, 2007.
 

 ¶ 4. During voir dire, the State struck six jurors: Amber Bagley, David Green, William McGee, Charles Smith, Tiffany Norwood, and Charles Ayers, all of whom are members of the African American race. The State struck five of the six jurors for being inattentive and struck the sixth juror because he did not honestly respond to one of the State’s questions.
 

 ¶ 5. During the State’s case-in-chief, Officer Kenney Kennedy, the town marshal for the town of D’Lo, testified that in the early morning hours of December 30, 2006, he was driving his patrol car and making his rounds when he decided to patrol around the Exxon Truck Stop. Officer Kennedy stated that as he was about to turn into the truck stop, he noticed a vehicle parked on the side of the building and that this struck him as odd. He further stated that he noticed a man standing outside of the vehicle and that the man’s face appeared to be covered. According to Officer Kennedy, he chose to turn into a second entrance of the truck stop, so that he could go around the building to get a better view of the vehicle without being noticed by its occupants. Once he got a better view, Officer Kennedy saw that the man standing outside of the car, later determined to be Alexander, and a man in the driver’s seat, later determined to be Maurice, were both wearing red scarves around their faces. Officer Kennedy stated that Alexander “had something down along his side” and that he began walking toward the front of the store. Officer Kennedy further stated that Alexander looked over and saw him, and this caused Alexander to spin around and walk back toward the vehicle. Officer Kennedy testified that once Alexander made it back to the car, “[Alexander] knelt down and threw the object under the car and [Officer Kennedy] could hear a metallic metal sound hitting under the car.” According to Officer Kennedy, Alexander stood up
 
 *60
 
 and began walking briskly toward the front of the store.
 

 ¶ 6. Officer Kennedy testified that he positioned his patrol car in order to see what Alexander had thrown under the car. After shining his headlights under the car, he noticed that “it was a long barrel type shotgun.” Officer Kennedy stated that at that point, Maurice got out of the car and attempted to walk to the front of the store but that he instructed him to get down on the ground. Officer Kennedy arrested Maurice and called for back up.
 

 ¶ 7. Officer Kennedy stated that he remembered the temperature of the morning of the incident because it was warmer than typical December weather. He remembered wearing a short-sleeved shirt and a pair of jeans. He testified that Alexander was wearing a dark overcoat, blue jeans, dark-colored shoes, a ski mask, and a bandana around his face on the morning of the incident. He further testified that Maurice was wearing a light-colored sweatshirt, jeans, shoes, and a bandana around his face.
 

 ¶ 8. Deputies Marvin Miller and Bernard Gunter with the Simpson County Sheriffs Department testified that they responded to Officer Kennedy’s call for assistance. Both deputies corroborated Officer Kennedy’s testimony about what Alexander and Maurice wore on the morning of the incident. Each deputy stated that they wore short-sleeved shirts that morning because of the warm weather.
 

 ¶ 9. Additional facts, as necessary, will be discussed during the analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 10. As previously mentioned, the State exercised peremptory challenges against six potential jurors of the African American race. Alexander and Maurice assert that the trial court erred in allowing the State to exercise its peremptory challenges against these potential jurors and argue that these challenges were pretextual.
 

 ¶ 11. In
 
 Carter v. State,
 
 799 So.2d 40, 46 (¶¶ 21-27) (Miss.2001), our supreme court thoroughly discussed peremptory challenges and the necessary procedure for resolving disputes regarding alleged pretextual challenges:
 

 In
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a peremptory challenge cannot be used to exclude venire-persons from jury service based on their race. A peremptory challenge based on race constitutes a violation of due process.
 
 Id.,
 
 476 U.S. at 98, 106 S.Ct. at 1723-24.
 

 [[Image here]]
 

 The necessary steps to resolve a peremptory challenge based upon
 
 Batson
 
 are cited in
 
 Stewart v. State,
 
 662 So.2d 552, 557-58 (Miss.1995) as follows:
 

 1. The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge.
 

 2. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror.
 

 3. The trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in the exercise of peremptory challenges.
 

 ⅜ * * * * *
 

 In
 
 Woodward [v. State],
 
 this Court stated the “next step is to determine whether the prosecution met its burden
 
 *61
 
 of showing sufficient race-neutral explanations for its strikes.” 726 So.2d [524,] 529-30 [ (Miss.1997) ]. “A peremptory challenge does not have to be supported by the same degree of justification required for a challenge for cause.”
 
 Stewart,
 
 662 So.2d at 558. It is not necessary to meet the same standard of examination as a challenge for cause for a peremptory challenges, [sic].
 
 Id.
 

 [The Mississippi Supreme Court] has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a ve-nire-person from the challenged party is [sic] in [fact] race-neutral. Tanner v. State,
 
 764 So.2d 385, 393 (Miss.2000). In
 
 Stewart,
 
 [the Mississippi Supreme Court] held that
 
 “one of the reasons the trial cowt is granted such deference in a Batson issue is because the demeanor-of the attorney making the challenge is often the best evidence on the issue of race neutrality.”
 
 [Stewart,] 662 So.2d at 559. Furthermore, the determination of discriminatory intent will likely turn on a trial judge’s evaluation of a presenter’s credibility and whether an explanation should be believed.
 
 Hernandez v. New York,
 
 500 U.S. 352, 365, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). In
 
 Stewart,
 
 [the Mississippi Supreme Court] also held that “despite the importance of demeanor evidence, the trial court must consider all the relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions poised on voir dire.”
 
 [Stewart,]
 
 662 So.2d at 559 (citing
 
 Griffin v. State,
 
 607 So.2d 1197, 1202 (Miss.1992)). A reversal will only occur if the factual findings of the trial judge appear to be “clearly erroneous or against the overwhelming weight of the evidence.”
 
 Tanner,
 
 764 So.2d at 393 (citing
 
 Stewart,
 
 662 So.2d at 558;
 
 Davis v. State,
 
 551 So.2d 165, 171 (Miss.1989)).
 

 (Emphasis added).
 

 ¶ 12. In the case sub judice, the circuit court made a prima facie determination and required the State to present its race-neutral reasons for challenging the six potential jurors. Ultimately, the circuit court accepted the race-neutral reasons put forth by the State. As to each of the State’s peremptory challenges, the record reflects the discussion and the circuit court’s findings:
 

 THE COURT: Amber Bagley.
 

 [PROSECUTOR]: Strike.
 

 [ATTORNEY FOR DEFENDANTS]: We’re gonna ask for
 
 Batson
 
 on that, Your Honor, whenever you get ready.
 

 THE COURT: Okay. Excuse me.
 

 [PROSECUTOR]: Do you want to do the
 
 Batson
 
 one at a time or just all when we get through, Judge?
 

 THE COURT: I can do it now, if you want. Give me her race, gender and reason, please.
 

 [PROSECUTOR]: The race is black. The gender is female. Even yesterday, Judge, when I was talking, she was not attentive. Especially today, she was not attentive. And I feel that’s the reason I’m striking her.
 

 THE COURT: [Attorney for Defendants], do you have any evidence or argument to rebut that?
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, she seemed — first of all, I believe that’s pretextual. She looked very observant to me in listening in. She was fully aware and actually shook her head on what I asked the jury on several occasions.
 

 THE COURT: [Prosecutor], any response?
 

 [PROSECUTOR]: No, sir. Just from mine [sic] yesterday and today, when
 
 *62
 
 I was either making my opening statement or doing my voir dire, you know, she was looking off and inattentive, is what I was saying.
 

 THE COURT: If she was attentive to the defense attorney and not attentive to the prosecutor, that would be all the more reason for the [S]tate to strike her. Are any of the jurors you’ve accepted black females?
 

 [PROSECUTOR]: Yes, Your Honor. Number 8 is a black female.
 

 [ATTORNEY FOR DEFENDANTS]: No. I’ve got her — No. 8 is white.
 

 [PROSECUTOR]: Excúseme. I’m sorry, Your Honor.
 

 THE COURT: Are any of the jurors that you’ve accepted white females — I mean black females? Pardon me.
 

 [ATTORNEY FOR DEFENDANTS]: Okay. There it is. I’m sorry. There it is.
 

 THE COURT: Which one?
 

 [PROSECUTOR]: Number 6.
 

 THE COURT: Number 6 is a—
 

 [PROSECUTOR]: Yes, sir.
 

 THE COURT: Is that a female? Wilk-ie?
 

 [ATTORNEY FOR DEFENDANTS]: Uh-huh.
 

 THE COURT: Okay. An unusual name for a female. All right. With that observation, the strike will be allowed.
 

 [PROSECUTOR]: Okay.
 

 THE COURT: ... [I]t’s my finding it is a race, gender neutral reason and therefore it will be allowed. To the State, No. 10, David Green.
 

 [PROSECUTOR]: Judge, David Green has been a juror before. He has a son — I asked this question yesterday; he did not respond to it. But he was on the jury last year. And I’ve checked with the sheriff; he has a son that has served time, and I think possibly that David may have also. He did not respond to that question. So that’s the reason I’m striking him.
 

 THE COURT: Strike him.
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, we again raise
 
 Batson.
 
 Because there were several people that said they—
 

 THE COURT: She can’t hear /all.
 

 [ATTORNEY FOR DEFENDANTS]: I’m sorry. There were several on the jury — white, black — where they had had family members in the jail — that had served time in prison. I’m sorry.
 

 THE COURT: Well, that doesn’t exclude them.
 

 [PROSECUTOR]: This man did not respond to that question, Your Honor.
 

 THE COURT: What’s his race?
 

 [PROSECUTOR]: He is a black male.
 

 THE COURT: All right. If he has been convicted of a felony himself or a family member has, that certainly is a race gender [sic] neutral reason. Do you have anything to rebut that, [Attorney for Defendants]?
 

 [ATTORNEY FOR DEFENDANTS]: Other than he did not respond, Your Honor, and that was clearly asked.
 

 THE COURT: Then that’s the reason to strike him, if you got knowledge and you didn’t respond.
 

 [[Image here]]
 

 THE COURT: Number 16, William McGee.
 

 [PROSECUTOR]: Your Honor, both yesterday and today Mr. Magee [sic], even in my opening statement today, beside being inattentive, he has a kind of a scowl look when I’m talking. It's—
 

 THE COURT: Show me what he did.
 

 
 *63
 
 [PROSECUTOR]: Kind of like this. It wasn’t a nod and a smile like some jurors do to you. And it seemed like when [Attorney for Defendant] was talking, he showed more attention. He kind of puts his head to the side and—
 

 [ATTORNEY FOR DEFENDANTS]: Again, Your Honor, I—
 

 THE COURT: What’s his race?
 

 [PROSECUTOR]: His race is black male.
 

 THE COURT: Okay. [Attorney for Defendants].
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, I spoke with Mr. McGee. Obviously, we went to high school together. We weren’t close friends. So he remembered me when I didn’t remember him. He seemed very attentive. And I didn’t notice any scowling on the part of the State. And that was exactly the reason I said earlier and said the more reason not to strike, Your Honor. That’s more reason to leave him on. I think that’s just purely pretextual in trying to strike him on the grounds of race.
 

 [PROSECUTOR]: And, Your Honor, I think that might have some part as to why he was paying more attention or looking — -more attention when [Attorney for Defendants] was speaking. He went to school with [Attorney for Defendants].
 

 THE COURT: What African-males have you accepted?
 

 [ATTORNEY FOR DEFENDANTS]: None. He’s struck them all.
 

 [PROSECUTOR]: None, so far, Your Honor.
 

 THE COURT: I’m going to allow the strike and find that it’s race-neutral. Because Mr. McGee attended school with defense counsel, that’s a valid reason to strike.
 

 * * * * * ⅜
 

 THE COURT: Okay. We are one short. You owe one more, [Prosecutor]. Charles Smith, 22.
 

 [PROSECUTOR]: Your Honor, I’ve already struck one forklift operator and—
 

 THE COURT: You sure did.
 

 [PROSECUTOR]: — I would strike No. 22.
 

 THE COURT: Okay.
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, we again raise the
 
 Bat-son
 
 challenge again, because it’s pre-textual. Because again, he’s another black male.
 

 THE COURT: All right, [Prosecutor], Gender, race[?]
 

 [PROSECUTOR]: Charles Smith is a black male.
 

 THE COURT: Reason?
 

 [PROSECUTOR]: Well, there’s actually two reasons, Your Honor. First, I’ve already struck one forklift operator, and also in the last two days, Mr. Smith has not shown attention while I asked questions.
 

 THE COURT: Okay. [Attorney for Defendants].
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, I think he paid attention. He was fine. He was honest. We just again think it’s pretextual.
 

 THE COURT: All right. I find it’s a race-neutral reason. Inattentiveness has been approved by our supreme court. So I will allow the strike.
 

 [PROSECUTOR]: And also he’s a forklift operator.
 

 THE COURT: Right, a forklift operator as well. 23 to the State, Tiffany Nor-wood.
 

 
 *64
 
 [PROSECUTOR]: Strike, Your Honor.
 

 THE COURT: 24, Charles Ayers to the State.
 

 [PROSECUTOR]: Strike, Your Honor.
 

 [ATTORNEY FOR DEFENDANTS]: Again, raise
 
 Batson
 
 on both. Both are black, one female and one male.
 

 THE COURT: All right. Race gender reason for No. 23.
 

 [PROSECUTOR]: Your Honor, No. 23 is a black female. She works with the department of corrections. And young people that work with the department of corrections — I feel [sic] is the type work whereas they develop a sympathy for it. So one working with the department of corrections, they could possibly be involved with them, and that’s the reason I’m striking her.
 

 THE COURT: [Attorney for Defendants].
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, I’ve never heard such a pretextual argument in my life. She works with the department of corrections, deals with these guys, and they lose sympathy for them because they get tired of hearing about it.
 

 THE COURT: [Prosecutor].
 

 [PROSECUTOR]: I guess it kind of goes along with engineers, Judge.
 
 [1]
 
 I mean, that — I’m striking all people that work with the department of corrections on this panel. Also, as she— yesterday she was sitting there on the front row, right. She was inattentive yesterday and also today.
 

 THE COURT: I’m going to allow the strike. I find it’s [a] race-neutral reason. Number 25 to the State, Randy Nichols. You are out of challenges.
 

 [ATTORNEY FOR DEFENDANTS]: How about Charles Ayers?
 

 THE COURT: Oh, Charles, Ayers. Pardon me. Excuse me.
 

 [PROSECUTOR]: Charles Ayers is a black male. He was employed with the City of Jackson.
 

 [ATTORNEY FOR DEFENDANTS]: He’s striking everybody that works with the City of Jackson.
 

 THE COURT: Don’t interrupt.
 

 [ATTORNEY FOR DEFENDANTS]: I’m sorry, Your Honor.
 

 THE COURT: Don’t do that again.
 

 [PROSECUTOR]: And again the reason is Mr. Ayers, yesterday and today on this panel, was inattentive to when I was asking questions and during my opening statement today.
 

 THE COURT: [Attorney for Defendants].
 

 [ATTORNEY FOR DEFENDANTS]: Your Honor, I think, again it’s just pretextual.
 

 THE COURT: I’m going to allow the strike. Again, the supreme court has shown that inattentiveness is a general reason for a strike.
 

 ¶ 13. It appears from the circuit court’s ruling on each peremptory challenge that it determined that Alexander and Maurice failed to prove that there was purposeful discrimination. These determinations fall squarely within the discretion of the circuit court, which will not be reversed except upon a showing of clear error.
 
 Tanner,
 
 764 So.2d at 393(¶ 14) (citing
 
 Stewart,
 
 662 So.2d at 558). As mentioned above, “the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality.”
 
 Stewart,
 
 662 So.2d at 559. Here, the circuit court observed the demeanor of the prosecutor and concluded that the reasons set forth by the
 
 *65
 
 State were not pretextual. After reviewing the record, we cannot say that this conclusion was clearly erroneous. Therefore, this issue is without merit.
 

 1! 14. Next, Alexander and Maurice assert that the circuit court erred by denying their motion for a new trial because the jury’s verdict is against the overwhelming weight of the evidence. Specifically, they argue that besides the testimony of Officer Kennedy, the State presented no evidence that they had any intent to rob the truck stop.
 

 ¶ 15. We follow a well established standard for determining whether a verdict is against the overwhelming weight of the evidence:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997). The evidence should be weighed in the light most favorable to the verdict.
 
 Id.
 

 Nelson v. State,
 
 10 So.3d 898, 908(41) (Miss.2009) (quoting
 
 Jones v. State,
 
 904 So.2d 149(14) (Miss.2005)).
 

 ¶ 16. Regarding the intent for Alexander and Maurice to rob the truck stop, Officer Kennedy’s testimony supports the verdict. He testified that he saw Alexander walk half-way toward the store’s entrance with an object that was later determined to be a shotgun. He further testified that Alexander and Maurice had bandanas over their faces and that the car was parked in a suspicious area of the truck stop’s property. Accordingly, reasonable jurors could have found Alexander and Maurice guilty of attempted armed robbery. Allowing the verdict to stand will not sanction an unconscionable injustice. Therefore, this contention of error is without merit.
 

 ¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . We note here that earlier during voir dire, the attorney for the defendants struck all engineers because he "[does] not like engineers on juries.”